# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **S.F.**

**No. 18-1143** (Berkeley County 17-JA-88)

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father E.F., by counsel Nicholas Forrest Colvin, appeals the Circuit Court of Berkeley County's December 20, 2018, order terminating his parental rights to S.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Elizabeth Layne Diehl, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court abused its discretion in terminating his parental rights and denying his motion for post-termination visitation with the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the mother of S.F. alleging that another child living in the home died as a result of Benadryl intoxication. The DHHR alleged that petitioner was working out of state when the child died, but was aware of other safety issues in the home, including chemicals and liquor bottles in reach of the children and a pool without proper safety measures. The DHHR also alleged that petitioner was required to register as a sex offender due to his criminal conviction of a sex crime related to fourteen-year-old girl. The DHHR alleged that petitioner neglected S.F. by a "refusal, failure, and inability to provide [her] with necessary food, clothing, shelter, supervision, and medical care." Petitioner waived his preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

Petitioner filed an answer to the petition and admitted that he failed to provide the child with necessary shelter and supervision. The circuit court adjudicated petitioner as an abusing parent. Petitioner requested a post-adjudicatory improvement period, which the circuit court granted in October of 2017. The circuit court also granted petitioner supervised visitation with the child.

In November of 2017, a multidisciplinary team ("MDT") meeting was held following a report that S.F. was inappropriately touching a similarly-aged child. According to the child's therapist, S.F. was found underneath a table, touching the genitalia of a peer who had exposed herself to S.F. Additionally, petitioner's visitation supervisor reported concerns that petitioner was overly involved with S.F.'s cleanliness after she used the bathroom. The circuit court temporarily suspended supervised visitations and ordered that S.F. undergo a forensic interview. However, S.F. was unresponsive during the interview. The DHHR implemented therapeutic visitation to address parenting skills during visitation.[2]

Petitioner sought and participated in a psychosexual risk assessment for the purpose of determining his risk for sexual reoffending and to receive recommendations for treatment in May of 2018. In the evaluation, petitioner gave his narrative of his sexual offense, in which he described an encounter with the fourteen-year-old step-daughter of his "best friend for 35 years." Petitioner admitted that he was "a very intricate part of the family" and that he "considered himself like a big brother to her." Prior to the incident that led to petitioner's sexual offense conviction, petitioner admitted that he "touched [the victim's] breasts and [he] put [his] fingers down her britches" and asserted that "[s]he did not object." Petitioner further asserted that the victim pursued him, but that he "turned her down on numerous occasions." Finally, petitioner described the incident related to his conviction, including details that the victim came to his home, removed her trousers, and that he performed oral sex on her, after turning down her request to have sex. The incident ended after the victim's stepfather knocked on petitioner's door. Further, petitioner admitted he did not complete his sexual offender treatment, but, after three years of participation in treatment, his probation officer did not require him to complete further treatment. In the evaluation, petitioner expressed that his strategy to prevent a subsequent offense was to "never allow[] other girls or women in the house without his supervisor, [the mother] present and not allow[] any kind of inappropriate clothing in his home."

The evaluator concluded that petitioner fit the profile of a "situational or regressed sex offender," who tend to have a lower risk to reoffend. The evaluator positively noted that petitioner had not reoffended for the past ten years. However, the evaluator also expressed concern that petitioner met the diagnostic criteria for cannabis use disorder and that cannabis use increased the likelihood for re-offense. Further, the evaluation recommended a restriction of petitioner's pornography access because he admitted to viewing pornography prior to his sexual offense. Ultimately, the evaluation predicted petitioner's likelihood of reoffending to be "[b]elow [a]verage" and likely lower because he had not reoffended since his conviction.

---

[2]In February of 2018, the mother and another adult respondent relinquished their parental rights to S.F. and other children, who are not petitioner's biological children, after the DHHR filed an amended petition alleging that the cause of death of S.F.'s half-sibling was homicide.

The circuit court held hearings in September of 2018 and November of 2018 regarding disposition. During those hearings, the incident report for petitioner's sexual offense, including the victim's statement, was introduced into evidence. According to the victim's statement, petitioner brought her to his home and then locked the door. The victim stated that petitioner removed her shorts once, and she pulled them back up. Petitioner removed her shorts again, and the victim stated that she "kept saying no and then he licked me." The victim stated that she did not remember him doing anything like this before, except that he asked her and a friend to show him their breasts on one occasion and they declined. Petitioner's psychosexual evaluator testified that she was not provided the victim's statement prior to her evaluation, but that her opinion of petitioner's risk for sexual re-offense was unaffected by the differences in the narratives. The evaluator agreed that petitioner's narrative of his actions, which included multiple sexual incidents with the victim prior to his conviction, constituted a "grooming" of the victim "and finally got her to a point where he could engage in oral sex with her." The circuit court found that petitioner's safety plan, which involved supervision by the mother, was no longer viable due to the mother's relinquishment of parental rights.

The circuit court also heard evidence regarding an injury that S.F. suffered while in petitioner's care around August of 2018. At that time, petitioner was exercising overnight visitation with S.F. when her elbow was injured. According to the staff members of her daycare, petitioner called the daycare following the incident and explained that S.F. had injured her elbow, but that she was just "milking" the injury and was fine. The staff member explained to petitioner that she would follow up with a call to him later, but petitioner did not answer her call and did not respond until the end of the day. S.F.'s therapist testified that S.F. believed petitioner was angry when he caused the injury because she was jumping on the bed. S.F. told her therapist that she did not want to see petitioner any more after the injury. Petitioner testified that the injury was accidental, caused when the child slid off the bed while he tried to ready her for sleep. Petitioner admitted that he did not answer the call from the daycare. The circuit court found that petitioner caused the injury to S.F. resulting in an injury to her elbow and failed to take reasonable measures to seek treatment. Further, the circuit court found that petitioner failed to protect S.F. by not timely responding to the daycare's call regarding her need for treatment.

Three witnesses testified regarding S.F.'s bond with petitioner. S.F.'s therapist testified that she did not believe that the child was bonded to petitioner, but that she could see a bond between the child and her foster parents. Petitioner's therapist and the visitation supervisor both testified that S.F. was bonded with petitioner, but the circuit court found that their testimony was "colored by sympathy" for petitioner. The visitation supervisor testified that petitioner continued to blame the DHHR for "the continued separation between him and his daughter" and blamed the mother for the safety concerns in the home at the time of the removal. According to the visitation supervisor, petitioner accepted responsibility for his prior sexual offense only. Petitioner's therapist also testified that he would need six months to one year of additional therapy and agreed that immediate reunification without additional support would not be in the child's best interests. Additionally, both service providers testified that they did not address petitioner's prior sexual offense due to his purported low risk to reoffend.

The circuit court held a final dispositional hearing in December of 2018. Petitioner did not appear, but was represented by counsel. The circuit court determined that S.F. would be unsafe in

petitioner's home because she was too young to be able to distinguish between normal parenting behavior and grooming behavior. The circuit court concluded that the child's interests would not be promoted by preserving the family. Further, the circuit court found that petitioner's testimony lacked credibility and that he failed to accept responsibility for his actions. Based on those findings, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and terminated petitioner's parental rights. The circuit court's decision was memorialized by its December 20, 2018, order. Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner asserts that the circuit court abused its discretion in terminating his parental rights because its decision was based on conditions for which he had not been previously adjudicated. Specifically, petitioner argues that the child's elbow injury, his status as a sexual offender, and the sexual conduct between S.F. and another child were all factors that the circuit court considered and none of those issues were subject to adjudication. Petitioner believes that, because of the lack of adjudicatory proceedings, the circuit court could not have considered these events for the purpose of disposition. However, we disagree with petitioner and find that these issues were properly considered in relation to disposition.

First, the circuit court properly considered the injury to the child's elbow as it related to petitioner's admission that he failed to provide adequate supervision to the child. Although it was disputed whether the injury was accidental or intentional, it was clear that petitioner's actions caused the injury as a result of being unable to safely parent the child. This conduct did not require a new or amended petition because it was an extension of petitioner's original admissions of inadequate supervision. Therefore, S.F.'s injury was a symptom of petitioner's lack of progress toward adequate parenting. Petitioner's reaction to the injury and his failure to seek medical attention or respond to S.F.'s daycare further emphasize his inability to safely parent the child.

---

[3]The mother voluntarily relinquished her parental rights as noted above. According to the parties, the permanency plan for the child is adoption in her current foster placement.

This Court has held "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.,* 233 W. Va. 57, 754 S.E.2d 743 (2014). Clearly, petitioner's actions were not aligned with S.F.'s best interests, and the circuit court properly recognized and considered that fact at disposition.

Likewise, the circuit court properly considered petitioner's sex offender status and his dishonesty in that respect at disposition. Importantly, petitioner sought the assistance of the psychosexual evaluator in this case and was the only party that provided information upon which her evaluation was based. However, petitioner withheld the official incident report that contradicted his version of the offense. Moreover, petitioner asserted that he had never read that report and entered a guilty plea to his conviction without reviewing the evidence. The circuit court considered this testimony incredible and "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). More concerning, the psychosexual evaluator and the circuit court agreed that petitioner's behavior toward his prior victim was consistent with a grooming pattern designed to lead up to greater sexual acts. The circuit court correctly considered S.F.'s inability to recognize these actions based on her age. Accordingly, we find that the circuit court appropriately considered petitioner's status as a sex offender in accordance with the child's best interests.

Ultimately, the circuit court correctly terminated petitioner's parental rights upon findings that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future and that termination was necessary for the child's welfare. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon these findings. Further, West Virginia Code § 49-4-604(c)(3) provides that situations in which there is "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" include one in which the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Petitioner participated in therapy and visitation throughout his post-adjudicatory improvement period. However, despite the services provided, S.F.'s injury and petitioner's reaction revealed that he was not prepared to safely parent the child. Additionally, the visitation supervisor disclosed that, after participating in services, petitioner continued to blame the DHHR and the mother for S.F's removal and accepted little responsibility himself. This Court has held

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth

5

of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Moreover, petitioner's service providers both agreed that petitioner needed further therapy and services, possibly up to an additional year. Therefore, based on petitioner's failure to acknowledge his responsibility and his need for additional services, the circuit court's findings that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected and that termination was necessary for the welfare of the child were not clearly erroneous and are supported by the record.

Petitioner also argues that the circuit court incorrectly construed West Virginia Code § 49-4-604(b)(7)(D) to grant additional discretion regarding reunification when a parent is required to register as a sex offender.[4] Yet, petitioner fails to realize that the circuit court has discretion to determine whether "the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child." Syl. Pt. 2, in part, *In re C.M.*, 235 W. Va. 16, 770 S.E.2d 516 (2015)(citation omitted.). Therefore, regardless of the circuit court's reliance on West Virginia Code § 49-4-604(b)(7)(D), the circuit court properly exercised discretion in determining the ultimate disposition for S.F.

---

[4]Although we support the circuit court's termination of petitioner's parental rights for the reasons described above, we agree with petitioner that the circuit court incorrectly interpreted West Virginia Code § 49-4-604(b)(7)(D) as granting it discretion to "deny reunification with a parent when that parent is required to register as a sex offender." Rather, this section provides, in relevant part:

> For purposes of the court's consideration of the disposition custody of a child pursuant to this subsection, the department is not required to make reasonable efforts to preserve the family if the court determines: . . . A parent has been required by state or federal law to register with a sex offender registry, and the court has determined in consideration of the nature and circumstances surrounding the prior charges against that parent, that the child's interests would not be promoted by a preservation of the family.

This section refers to the requirement under West Virginia Code § 49-4-604(b)(6)(C)(iv), and others, that the circuit court consider "[w]hether or not the department made reasonable efforts to preserve and reunify the family." West Virginia Code § 49-4-604(b)(7)(D), therefore, removes the requirement that the DHHR make such efforts prior to the circuit court's consideration of dispositional alternatives when a parent "has been required . . . to register with a sex offender registry, *and* the court has determined in consideration of the nature and circumstances surrounding the prior charges against that parent, that the child's interests would not be promoted by a preservation of the family." (Emphasis added). The section does not grant discretion to deny reunification, as the circuit court contended below.

Finally, petitioner argues that the circuit court abused its discretion in denying his motion for post-termination visitation with the child. In regard to post-termination visitation, this Court has held

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Petitioner contends that both service providers testified that a bond existed between petitioner and S.F. However, as mentioned above, the circuit court found that these witnesses' testimony was "colored by sympathy" for petitioner. Further, the circuit court found that S.F.'s therapist's testimony and opinions were more closely aligned with the child's best interests. S.F.'s therapist testified that she did not observe a bond between S.F. and petitioner, but did see that S.F. expressed a bond towards her biological half-siblings and foster parents. As cited above, "[t]he trier of fact is uniquely situated to make such [credibility] determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C.*, 201 W. Va. at 388, 497 S.E.2d at 538. The expert that worked closest with S.F. determined that she did not share a bond with petitioner. Accordingly, we find that the circuit court did not abuse its discretion in denying petitioner's motion for post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 20, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: June 12, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison